Case number 18-17-34, Cal-Ful Police v. Cal-Ful Condominium Association Good afternoon, Justices. My name is Marty Schwartz, and I represent the plaintiffs' appellants. Good afternoon, Counsel. Good morning, Judges. My name is David Brown. I represent the appellees, including Cal-Ful Condominium Association, and individuals Maria Arcos, Rachel Owens, and Omar Castro. Thank you, Counsel. Whenever you're ready. Now, please record. This is an appeal from entry of summary judgment on a breach of fiduciary duty count, or actually I believe there's two counts, and a section 2615 motion to dismiss an account that set attorneys fees for failure to provide condominium records at the request of a condominium owner. I want to focus really on the breach of fiduciary duty count, and really just one element of that. And that has to do with the sixth and final element of equitable estoppel. So the defendants in this case moved for summary judgment on the issue of equitable estoppel. And for purposes of summary judgment, I conceded the first four elements. The third element of equitable estoppel has to be, it's the defendant who usually raises equitable estoppel, and it was in this case. So the third element is the defendant has to reasonably rely on what the plaintiff said. The sixth element, which is the one that's really rather buffered issue, but the one I'm going to focus is, is the part of this, in this case, the defendant would have to be prejudiced by his reliance on the plaintiff's misrepresentation. If the plaintiff was going to now claim that that misrepresentation was actually an accurate statement. In other words, he can't change his position. So in the typical case, this was an insurance company. They tell the claimant, we're going to settle. We admit liability, we're going to settle. The defendant, or the plaintiff in that case, then doesn't file a lawsuit within the statute of limitations. And then after the statute of limitations comes around, the insurance company changes their position and says we're not going to settle. That's where equitable estoppel comes in, and there's a number of cases. It has to do with the plaintiff changing his position after the defendant relied on a statement made by the plaintiff. Is that the only way that equitable estoppel manifests itself? Well, Your Honor, it's the one that's relevant in this case and the one that both parties briefed, and the trial judge ruled based on this sixth element, which was really the heart of the case. Unfortunately, Your Honor, the trial court misunderstood the sixth element. What was the statement made or the action? So my client was the developer of a condominium project in 1994. There's three commercial units that he owned, and there was ten residential. They're two separate associations. But from 1994 through 2007, he ran them to say there was one association. There was one board of directors, there was one bank account, they all had the same assets. He treated it as one association. And he told other members that there was one association. He leaves the board of directors or board of managers in 2007. In 2011, there's a fire that causes damage to the residential and the commercial. Yeah, and we know that. But how does all that, those representations that may or may not have been appropriate as far as the one condo, the second condo association, how does that affect what was done relative to settling with the insurance company or destroying or demolishing the commercial condos? Justice, with all due respect, I have no idea. And that's why I think their argument is because we told them that there was one association in 2007, that they thought they had the authority in 2012 to settle the case. And if they had known there was two associations, they would not have settled the case. Well, I understand your argument to me that you're basically saying that they were unreasonable, it was unreasonable for the directors to rely on your client's representation that there was one association. And, you know, that they could have found out that there was really two and they essentially relied on this to their detriment. I mean, that's basically what your argument is. But I would ask, you know, there were other entities such as HUD and the title insurers. They didn't discover it until way far down the road. And I don't know if they ever did. When the first page of the condo declaration was amended, that was only to comply with something that HUD required. But I don't think anybody ever discovered that there were two separate condo associations. And your clients basically gave that information to the directors who relied on it. Now you're saying that that was unreasonable? Well, Your Honor, there's the fifth element, not the sixth element. Well, regardless of which number it is, I mean, that's your argument, isn't it? That it was unreasonable for them to rely on the representations of your client, that this was just one association. I mean, that there were two associations and they shouldn't have treated it as one. That is one of my arguments, and I'll state this, that the declaration for the residential was recorded against the residential. Anyone, when they bought their units, when they bought their units, that was a declaration that was recorded. What the defendants have done is say, in 2007 we recorded some declaration that was confusing. However, as the defendants admit, that was recorded against the commercial units. They never would have seen that, and there's no evidence in the record that any of the defendants saw or relied on that 2007 document. So, the only document that they would have seen on their units, when they bought their units, was to show that there was a residential condominium, and it makes reference to an operating agreement for the commercial units. Now, how could they close an approach of their units without getting a title policy with this declaration coming out? Counselor, a couple of preliminary questions. The fire was in 2012, right? Yes. And the insurance that we're talking about covered the common areas? Of both. Of both. The residential and commercial. Common areas, not the internal, right? That is correct, Your Honor. Right. Okay, so when the commercial units were demolished, what was the notice to the owners? When the... Commercial units, in 2012, they were demolished, right? They would actually realize that the board of directors directed the contractor to demolish them. We did not. Well, my question is, was there any notice to you? Notice to us? Yes. No, not to the commercial unit owner. Okay, thank you. So, just going back to what Your Honor said, they would have had this notice. The record is not confusing. The trial judge says, oh, there's all these documents. It's all confusing. And I'll admit my client perhaps didn't do everything according to her. But he is, I would ask you to cut him some slack. He's 83 years old. English is his second language. And he said, look at what he did. Well, who cares what he did in 2007? I don't know how that affects what the directors did in 2012 with respect to the player. So the trial judge interpreted equitable estoppel to mean that if you make a misrepresentation and you don't withdraw it, your case is barred. And again, my client does not change positions. There'd be one thing if my client said in 2007 there was one association and then he claimed in 2012 there was two associations to the board and you had no right to make a decision on behalf of the commercial unit. If my client made that claim, that would be equitable estoppel. But my client has maintained that the first option, there's one association, and the complaint that's before the court was, even though there's two, it was treated as one, and the defendants owed my client a bridge of fiduciary duty. And then all the case law talks about in terms of this equitable estoppel is that the client has changed positions, and he can't say one thing and induce the action, and then change positions, say, oh, I was mistaken then after the defendant has relied on me. Well, there's, I don't have too much more to that. But I do want to point out there's a few things that were made in the appellee's brief. One, he said that I admitted that there was four, the first four elements of equitable estoppel. I want to make that clear. I admitted it for purposes of summary judgment. In my response, that's what I said. And before I began all argument for the summary judgment, I say I'm admitting it only for purposes of the summary judgment. By no means am I admitting it was an undisputedly committed fraud. The other argument that the defendant made was that I admitted on the record that it was reasonable for them to rely on me. Well, they take that quote out of context. The charge I've said was it reasonable for them to rely on their client. And I said, yes, except here not that there's public records. And when they buy a unit and the public record shows that it's conflicting, then they have no right to rely. And I just want to point out one other thing. If they bought their unit and then their client recorded something that they wouldn't have notice of, maybe they'd have a stronger argument. But here the relevant document showing two condominium associations was recorded before they bought their units. And I certainly didn't admit that when they're, in fact, I say to the opposite. If there's a public record, then it's not reasonable to rely. With respect to the 2007 declaration that the defendants focus on, saying it was fraudulent, et cetera, et cetera, there's no record that the defendant saw. And, again, it was recorded on the commercial unit. So I'm not even sure why it would even affect the defendants who owned the residential units. The defendant also argued my client made misrepresentations for 20 years. The only written misrepresentation is when he left the board and sent it on the flyer, saying it was an association that governs. And, by the way, I would say it was accurate because it was a de facto one association. Finally, the last point I'd like to make is the defendants throughout their brief referred to this as a fraud, fake documents, et cetera, like the crime of the century. There's absolutely no evidence that my client received a benefit at all. There's no allegation that my client did this so he could embezzle money or so he could buy units. Again, we got legal advice that it was a little bit sloppy. Instead of reinstating an old corporation, they just said incorporate a new corporation and save a few hundred dollars for the association, not my client personally. And when we're on a set, we fooled hard, et cetera, et cetera. And the mortgage holders, the trial judge said that, but there's nothing in the record about fooling hard or mortgages or title companies, et cetera. And even if they were fooled, what were they fooled into believing? The 2007 document says that the first page is residential and commercial, and then later it just talks about the residential and the legal description is a residential. But once again, what does this have to do with a fire in 2012? We do make it in our brief for the argument about approximate cause. And that's why Judge Martin read his case initially, saw their unclean hands based on the same thing because unclean hands has to be with respect to the same transaction. And what my client, again, I don't see the connection between what occurred in 2007 recording the document. But I'm done. Thank you. You'll have a few minutes for rebuttal. Good morning, Your Honors. Again, David Brown on behalf of the FLEs. I know that you're aware of the tortured and long history at this building, but there is some context in which I think it's appropriate to at least give broad strokes of it. The plaintiff appellants own this building by themselves, created two separate associations in 1994, one for commercial units, one for residential. They are and have always been the sole owners of the commercial units. They immediately ignore the corporate formalities and just start treating it as one. None of the individuals who were sued for breach of fiduciary duty were in the building when they started doing this. By 2001, they've incorporated a new name for the single association, whereas initially they were created as the commercial association and the residential association. By the way, he never incorporated the commercial association. In 2001, when he creates a single association, there is no reference to commercial or residential anymore. So he's done this. These are misrepresentations. We're talking about 2007? No. This is starting in 1994. People start coming into the building. This is how they understand it operates. Ruiz sits on the board from that time of inception until these individuals take over in 2007. At all times, he's continuing to represent that there's a single association called Calpol Condo Association. When they're coming on the board, lo and behold, that's when he sends out his notices. Hey, everyone, this is a single association. It covers commercial and residential. They relied on that. They believed that that was accurate. He records a declaration in 2007. It is the only declaration recorded on the record that actually has the name of the condominium association, Calpol Condo Association. If you go and try to find that name on the record, that's the only one you're going to find. Counsel, let's say it was inartfully done. I don't want to say anything other than that, the way this was handled, the whole condominium unit. Sure. Well, let's assume that for a moment. What's material about how inartfully done that was connected to these issues of settling with the insurance company and demolishing the units? So in order to plead a cause of action... It was the same insurance company. Everybody knew what it covered. Continue, please. Sure. In order to plead a cause of action for breach of fiduciary duty, you typically would have declarations that submit that obligation under the Illinois Condominium Property Act. The declarations that actually apply, not the one he recorded in 2007, do not confer that duty upon them. Duty upon them? To manage the affairs of a commercial condominium association, of which only Dr. Ruiz is a member. They are not allowed to be directors of his association, except for the fact that they believed they could be. Okay, so what authority do they have to settle the insurance and to demolish? He tells them, from 1994 as they're buying into this place and up through 2007 when they take over, that there's a single association which they believe to be true and which they believe governs both commercial and residential. He could have stopped them, and he should have stopped them, in 2011 when there was a fire and said, you know what, you have no legal right to do this. You don't. But he didn't. He continued to go with the Ruiz. And by the way, these are in the facts. Every person in the building, condominium, residential, or commercial, was supposed to purchase their own insurance and their own unit. Everyone did. Lo and behold, when there was a fire, Dr. Ruiz had not. So from the moment that fire happened, he's looking for an outcome. It's in the documents and the record. Well, that's his problem as to what his loss is on the fire. But again, what makes them responsible? Or, again, what about the fact that here they are, members of a condo association, and what is their responsibility under that? They would have to adjust the rights and obligations. If they were governing their own residential. Are you saying they had no authority to make the adjustment on the insurance? But for his representation that they could do so. So they had no authority to do it whatsoever. They had the authority provided by him. Well, how could he give them authority to do it? Because he told them that we are going to operate this as one association, and they undertook that, relying on his representation. Well, shouldn't they rely on the documents that they have in their condominium association? What authority that gives them? I'd like to restore to one case, if I may. Well, just tell me what authority they have under the present in-place condominium association document to do these things. They govern under the residential association. Which gives them no control whatsoever over the commercial. That's right. The second they found this out, they got as far away as they could. So they acted ultra vires? I mean, they acted outside of their authority. Here's my point. That's a yes or no question, counsel. They acted under the authority given to them by Dr. Ruiz. Did he have such authority to give? As a commercial association, yes. Okay. He gave it to them. The point of reliance is they never would have undertaken the duty in the first place. Well, shouldn't they know what their documents are and what condos, under what association, how? That's your responsibility as a condominium board member, isn't it? I understand that, and we have two responses to that. One is the case law. A case that we didn't have a chance to respond to, they cited to it in the reply. Vaughn V. Speaker explicitly says with respect to the reliance element, and I will also state that in the record, you'll see on the granted motion for summary judgment, as a trial of fact, Judge Demacopoulos concluded that Dr. Ruiz had committed a fraud. She states as such in the record, Vaughn V. Speaker states that with respect to reliance, the whole notion of reasonableness goes out the window that the person who made the misrepresentation did so knowingly and intentionally. There is no way that an individual who set up a commercial and residential association and then ignored those formalities from inception did not know that there were two associations. So it comes to the point, number one, as a matter of law, the reasonableness argument is out the door. But number two, what is this as far as the finding of intentional fraud? Sure. Was there a deposition? There are depositions of Dr. Ruiz and all of these individuals. Dr. Ruiz, you'll see cited in our brief, states unequivocally that, yes, he always represented there was one that was his intent. He even says that that's why everyone who came to the building believed it to be so. And furthermore, with respect to the public records, that's his opposition to, this isn't a proof element, that's his opposition to say, well, it's not reasonable. Number one, as a matter of law, I don't think he gets there. But number two, if it's reasonable, in 2007 when they go to look, I've already stated, what you would find, the only declaration that will have the actual name of the association he incorporated in 2001 would be the improper one, and it's recorded on his commercial units, which would import or suggest that that commercial unit is part of this association, the residential association. And so what we're saying is that he cannot come now before this court and say, because he doesn't have a legal document, he doesn't have a statute that confers a duty upon these individuals, he can't come now and say they voluntarily assumed a duty that he induced them to undertake. That is what he cannot deny. That is why his thopper applies on the sixth element, and I've made my comments on the fifth, and he didn't really address, I don't think, the books and records. And so, you know, sure. I'm going to ask the same question that Justice Connors asked, and I'm not sure what your answer was. Did these board members have a duty to understand what the documents under which they were operating, and were there such documents, number one? And number two, did they know what was in them? There's two responses. One, when someone makes an intentional misrepresentation, do you underpun the speaker? No. That is reasonable reliance at that point. You don't have to assume that the person telling you. But number two – Wait a minute. Just so I'm clear on your answer. They have – board members have no responsibility to know what's in documents under which they're operating. Is that your answer? Is that what you're saying? That is not. Oh, okay. Right. The same way that Dr. Ruiz, who created the Association with Commercial and Residential, had an obligation to know what he created, and could not just abrogate those unintentionally, because he did it intentionally, when they come in, in 2007 is when they come in, and what I'm telling you is, if you go to the public record, this isn't like, you know, the opposition states to a lot of zoning cases where it's just clear cut. Somebody has this, somebody has that, and you should have just gone and checked. If you go and check, and it's in the record, you would not have found a clear record. What you would find is recorded on commercial units that he is saying are in your association, called California Condo Association. If you go and check, you'll see that that's what's recorded on his commercial association. So, in other words, there was no clear document that would alert these board members to the fact that there were really two associations operating as one. Is that what you're saying? I think someone could deduce it as someone did in 2015, but I'm not saying everyone would, and certainly this counsel, when this suit was first filed, didn't catch onto it right away. My opposing counsel, who filed three iterations of a complaint asserting that that was the governing document for the entire association, didn't catch it, and we know what obligations he has under Supreme Court Rule 137. So, if you get back to the secondary aspect of what's reasonable and reliant, they could. If you want to say they should have gone to the public record, I'm telling you it's reasonable in the face of what they were told about the name of an association and the way it had been operated for the entire time they had been in the building, that these individuals as laypersons aren't going to figure it out any better than the lawyers did. And I guess there was one missing point. They allege in their complaint that they attached this, stapled this one page onto an existing declaration and recorded it to comply with HUD.  You know that's not the declaration. You know that that doesn't govern your commercial units, and you recorded on your commercial units at that time in 2007. That's a fraud, and that's what Judge Dimacopoulos found. Counsel, answer this question. What's the detriment? Your clients didn't have to pay out anything out of their pocket. The insurance company covered the common units, the common area, right? Are you talking about for this lawsuit or? Yeah. Yeah. The detriment is the second you undertake an obligation that you don't owe, you're now under risk, you're under time. None of the people who are in the residential units or the directors who should be controlling the residential units have any obligation to manage the affairs of a commercial association, subject themselves to the possibility that they can be sued by someone who might be litigious. So again, detriment is not damage or injury. Detriment is a possibility of something happening in the future. Right.  That's the detriment. The detriment begins the second they undertake a duty and expose themselves to risk up to the point that they get sued. And the prejudice is the same? The prejudice is if he's allowed to not admit that he induced them to undertake these duties, that he can then bring a claim for voluntary assumption of a duty. That's the truth. There was no voluntary assumption. Thank you. You're welcome. Thank you. Thank you, counsel. Mr. McCoy, brief rebuttal. Sure, just a couple points. Counsel said, it's hard to follow counsel's argument, but he admits they assumed the duty of, a fiduciary duty, of outweighing both the residential and the commercial, which is exactly what we allege. And when they assumed that duty, whether they assumed it mistakenly or not, they had that duty, they couldn't just settle by taking 100% for the residential and give the commercial, which they own, a pittance. So they had that duty, and counsel's admitting, he's saying they shouldn't have had that duty had they known, but in which they lived that duty, it was delegated to them by Dr. Ruiz. That's what he said. Dr. Ruiz delegated that duty to manage the commercial. And they did, and they breached that fiduciary duty. That's the allegation. Now, with respect to this 2007 and this fraud, again, I want to repeat, the residential declaration is recorded against the residential units. That residential declaration references an operating agreement that's also recorded that coordinates between the residential and the commercial. That was on title, and I pointed that out when I filed a motion to reconsider. That was on title when all the defendants purchased their units. None of the defendants said they saw the 2007 document that the first page, I agree, is ambiguous. But when counsel says it's a fraud, a fraud on who? Who's defrauding? Is HUD a part of it? Is HUD coming in here and saying, I don't even know what the fraud could possibly be. He was just saying because he changed the name of the corporation, HUD wanted to make sure the corporation was consistent with the declaration. This is not some type of fraud where someone's giving a benefit, et cetera. And it wasn't Dr. Ruiz, by the way, who was benefiting. It was 2007. It was at a meeting, and people were trying to sell their unit. And someone said HUD picked up that you changed the name of the corporation. So instead of going back to the original corporation, he changed the one page. Again, he shouldn't have done it. But as far as the trial judge finding intentional fraud, Your Honor, I didn't argue the first four elements before the trial judge because I thought the fifth and the sixth element. So fraud is a defense, but that's not what they move for summary judgment on. Unless you have any more questions. Thank you very much. Thank you to both sides for a very experimented argument. This matter will be taken under advisement.